IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

EATON MOERY ENVIRONMENTAL SERVICES INC.          CHAPTER 11
D/B/A DELTA ENVIRONMENTAL                        Case No. 2:10-bk-14713
FEIN 62-1687001

## DEBTOR'S PLAN OF REORGANIZATION
## DATED AS OF MARCH 24, 2011

The Debtor, Eaton Moery Environmental Services, Inc. (hereinafter referred to as the Debtor) in accordance with the provisions of 11 U.S.C.§1129(a)(11), hereby proposes this Plan of Reorganization.

## ARTICLE I
## DEFINITIONS

**1.01.** **"Administrative Claim"** means a claim for payment of any administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code. Administrative claims include, but are not limited to (a) any actual and necessary expense of preserving the Debtor's estate; (b) all allowances of compensation or reimbursement of expenses to the extent allowed by the Court pursuant to Sections 327 and 330 of the Bankruptcy Code; and (c) any fees or charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 123.

**1.02.** **"Allowed Claim" or "Allowed Interest"** will mean a Claim against or interest in Debtor's estate: (a) a claim that is not listed as contingent, unliquidated or disputed on the schedules of Debtor; or (b) to the extent that a proof of claim or interest is timely filed as to which no party in interest, including the Debtor, files an objection; or (c) which is allowed by a Final Order.

**1.03.** **"Allowed Secured Claim" or "Secured Claim"** means an allowed Claim for which the Claimant asserts and is determined by a Final Order to hold a valid perfected and

enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to set off or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under Section 553 of the Bankruptcy Code and such Claim is allowed by Final Order, but in any event only to the extent of the value determined in accordance with Section 506(a) of the Bankruptcy Code, or the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

    **1.04.** "**Assets**" means all of the property of Debtor.

    **1.05.** "**Bankruptcy Code**" **or** "**Code**" means the Bankruptcy abuse Prevention and Consumer Protection Act of 2005, as amended, principally codified in 11 U.S.C. § 101, et seq.

    **1.06.** "**Bankruptcy Court**" **or** "**Court**" means the United States Bankruptcy Court for the Eastern District of Arkansas, Helena Division, having jurisdiction over this proceeding, or in the event such Court ceases to exercise jurisdiction over this proceeding or with respect to any particular proceeding within or related to this case, such other court or adjunct thereof which exercises jurisdiction over this proceeding.

    **1.07.** "**Bar Date**" means the date set by the Court as the last day for filing proofs of claim against the Debtor.

    **1.08.** "**Claim**" has the same meaning as set forth in Section 101(5) of the Bankruptcy Code.

    **1.09.** "**Claimant**" means the holder of a Claim.

    **1.10.** "**Class**" means a group of Claims or interests which are substantially similar to each other, as classified pursuant to the First Amended Plan.

    **1.11.** "**Confirmation Date**" means the date of the entry of the Confirmation Order.

    **1.12.** "**Confirmation Order**" means the Final Order of the Bankruptcy Court confirming the First Amended Plan.

1.13. **"Creditors"** has the same meaning as set forth in Section 101(10) of the Bankruptcy Code.

1.14. **"Date of Filing"** means the date on which Debtor filed a petition for reorganization, being June 30, 2010.

1.15. **"Debtor"** means Eaton Moery Environmental Services, Inc.

1.16. **"Disclosure Statement"** means the Disclosure Statement prepared in connection with the Debtor's Plan of Reorganization dated March 24, 2011, pursuant to Section 1125 of the Bankruptcy Code, as the same may be modified or amended from time to time, including all exhibits and attachments thereto.

1.17. **"Disputed Claim"** means any Claim designated as disputed, contingent or unliquidated in Debtor's Schedules, or any Claim as to which an objection to the allowance thereof has been filed on or before the deadline for objecting to a Claim, and which objection has not been withdrawn or resolved by entry of a Final Order; provided, however, that the Court may estimate a Disputed Claim for purposes of allowance and distribution pursuant to Section 502(c) of the Bankruptcy Code.

1.18. **"Effective Date"** means the date upon which the Confirmation Order becomes a Final Order.

1.19. **"Final Order"** means an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time for appeal has expired.

1.20. **"Plan"** or **"Plan of Reorganization"** means the Debtor's Plan of Reorganization and any and all modifications and/or amendments thereto.

1.21. **"Priority Claim"** means a claim entitled to priority under Section 507 of the Bankruptcy Code other than an Administrative Claim.

1.22. **"Proponent"** will mean the proponent of this First Amended Plan. Proponent is the Debtor.

**1.23.** **"Pro Rata"** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.24.** **"Scheduled Claims"** means those claims listed in the schedules of Debtor.

**1.25.** **"Schedules"** means the Schedules of Assets and Liabilities and any amendments thereto filed by the Debtor in accordance with Section 521(1) of the Bankruptcy Code.

**1.26.** **"Unsecured Claim"** or **"General Unsecured Claim"** means a Claim that is not a Secured Claim and which is not an Administrative Claim, Priority Claim or Priority Tax Claim.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims or interests are placed in a particular Class as set forth below. A Claim or interest is placed in a Class only to the extent that the Claim or interest falls within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or interest falls within the description of such other Class or Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

2.01  **Class I Claims (Administrative Expenses).** Class I Claims include administrative fees and expenses for professionals hired with approval of the Court. These fees are subject to Court approval but shall be paid by the Debtor upon approval of the Plan post-petition. Also included in Class I are the fees of the U.S. Trustee.

2.02  **Class II (Priority Tax Claims).** The Allowed Priority Tax Claim of the IRS was $268,099.38 as of Filing Date. Although the schedules reflect this claim at $135,000, the $268,099.38 was figured by reducing the IRS' claim by penalties assessment. State sales taxes were owed on the filing date in the sum of $55,682.70.

2.03  **Class III (Priority Non-tax claims).** ADEQ Disposal fees were owed on the filing date in the sum of $58,000.00. The United States Labor Department is owed $33,610.77, based on a post-petition audit performed by the Department of Labor.

2.04  **Class IV (The Bank of The Ozarks).** This class claim consists of the Allowed Secured Claim of The Bank of the Ozarks of $4,210,000.

2.05  **Class V (H & R Farms Property Settlement).** This class consists of the Allowed Secured Claim of H & R Farms Property Settlement of $150,000.

-4-

2.06   Class VI (Landfill Priority Vendors).  This class consists of the Allowed Priority Unsecured claim of Landfills in the approximate amount of $654,920.

2.07   Class VII (DEI, LLC, Glen Eaton, Bryan Moery).   This class represents debt owed to insiders totaling $870,000.  These insiders typically would be entitled to any recovery above the liquated value of the company assets.  In Chapter 7 liquidation the net value of the company assets would be less than the $4,210,000 owed to the creditor The Bank of the Ozarks.  The Class III lender is owed approximately $4.2 million; the debtor's assets are worth approximately $3.8 million; therefore, there is no value over and above the creditor debt to secure the DEI, LLC note.  Further, Debtor contends that any claim by insiders on Company assets and or income will dilute the Company's ability to pay legitimate secured and unsecured creditors.  Eaton and Moery have voluntarily chosen to waive their claims of $10,000 and $60,000, respectively.  The twenty-one investors who hold notes totaling $800,000 are members of DEI, LLC.  Debtor asserts their claims are entitled to no distribution based on Sec. 510(c)(1).

2.08   Class VIII (Unsecured Claims).  This class consists of all Allowed Unsecured Claims, the amount of which is $463,000 according to the Debtor's schedules.

2.09   Class IX (Equity Security Holders).  This class consists of the shareholders of Debtor, to wit, (A.) Common Stockholders: Glen Eaton, Bryan Moery, and Bob Ford (B.) Preferred Stockholders: DEI, LLC; and Bryan Moery.

## ARTICLE III
## CLAIMS THAT ARE NOT IMPAIRED UNDER THE PLAN

**3.01**   Class I Claims (Administrative Expenses).  Class I Claims will be paid from the cash on hand prior to any distribution to unsecured creditors on the Effective Date.  Fees of the U.S. Trustee will be paid in full on the Effective Date.

**3.02**   Class IV Claims (Bank of the Ozarks).  The Bank of the Ozarks' first mortgage lien on real estate (as well as a blanket lien on all Debtor's personal property) in the amount of $4,210,000 is current and paid monthly at the rate of $57,000.  It will continue to be paid as scheduled in the original note and mortgage.  Said note, mortgage, and bond issues documents will remain in full force and effect, and ratified in all respects.

**3.03**   Class V Claims (H & R Farms Property Settlement).  The H & R Farms property settlement is a lawsuit settled in June 2010.  In exchange for $150,000 H & R Farms will convey title to 2.6 acres of property in Memphis, TN.  This property is a permitted transfer station necessary to the ongoing service of our single largest customer.  The $150,000 will be paid from the proceeds of the DIP working capital loan.  If all goes according to schedule, this payment will occur post-confirmation, as authorized by the Order approving the factoring arrangement with Paragon.  Conversely, this creditor is granted relief from the stay if these funds are not paid prior to May 15, 2011.

# ARTICLE IV
## TREATMENT OF CLASSES THAT ARE IMPAIRED UNDER PLAN

In full and final satisfaction and discharge of their Claims, Creditors of the following Classes will receive payments described below. The payments will be made in the order of the priorities listed and each Class or Creditor will be paid. Exceptions to this are Classes VI and VII. Class VI is a disputed claim and will receive no payment. The Class VII claims are schedule to receive annual payments for ten years till the claims are paid.

4.01 **Classes II & III (Priority Tax and Non-tax Claims).** The Allowed Priority Tax Claim of the IRS was $268,099.38 as of Filing Date; state sales taxes were owed in the sum of $55,682.70; ADEQ was $58,000; The Dept. of Labor claim is $33,610,77. All these claims cannot be paid in full on the Effective Date. Monthly payments shall be paid on these Class II and III claims, according to the attached payment schedule (Exhibit A), until each deficiency is cured.

4.02 **Class VI (Landfill Vendors Priority Unsecured)** The Allowed Unsecured Claim of the Landfill vendors will be paid in full by the Debtor's making payments of $14,589.25 per month until its claim of $654,920 is paid in full. This monthly payment amortizes the Landfill vendors claim at 6% interest over five years. The monthly payment will be prorated to each vendor based on their pro rata share of the total outstanding debt. (See Attached Exhibit A)

4.03 **Class VII (DEI, LLC; Glen Eaton; Bryan Moery Insider Notes).** This class is a contested and disputed claim filed by DEI, LLC, and its twenty-one members. These debts are from insiders within the Management and/or Ownership. The lien securing this note is subordinate to the liens of Class III (The Bank of the Ozarks) against the property that comprises the assets of the debtor. The Class III lender is owed approximately $4.2 million; the debtor's liquidation value of assets is worth approximately $3.8 million; therefore, there is no value over and above the Class III creditor debt to secure the Insider Note. Further, Debtor contends that any recovery of these Insider debts will dilute the ability to pay the legitimate secured and unsecured creditors. As stated above, Eaton and Moery voluntarily waive their claims. The DEI, LLC's $800,000 claim in investor notes should be disregarded because: (A) these claims constitute equity rather than debt; (B) these claims constitute classic insider preference; and (C) the holders of these claims have committed acts sufficient to have their claims equitably subordinated. Therefore, Debtor disputes these insider claims in full.

4.04 **Class VIII (Unsecured Claims).** All allowed claims in this Class will be paid 50% of face value from operating profits of the Debtor at the end of each calendar year. Debtor proposes to dedicate $20,000 on December 31st each year for this purpose. The total claims in that class, based on Debtor's schedules, are $464,000, subject to 50% decrease the claim would be $232,000. The $20,000 annual payment will be prorated based on each amount of the outstanding claim. This claim will be in paid in 10 years or less.

4.05 **Class IX (Equity Security Holders).** Class IX claimants existing stock shall be voided and 20,000 shares of new common stock will be issued as follows:

A.) In order to maintain and secure the performance of Senior Management 1000 shares each will be issued to: Tim Phillips, Vice President of Operations; Byron Neal, Marketing Director; and Carole McClain, Controller.

B.) To ensure that the Company meets financial assurance requirements 3000 shares will be issued to Bryan Moery or any other financially capable individual stockholder for the personal guaranty and collateral to secure a $1,312,000 Surety Bond. *(This is a requirement by ADEQ on all permits)*

C.) To ensure that Company has an individual authorized as Operator of Record at ADEQ, 3000 shares will be issued to Glen Eaton, who presently serves as Operator of Record at ADEQ. *(This is also a requirement of ADEQ)*

D.) To ensure that Company maintain continued access to the 16 rental trucks personally guaranteed by Glen Eaton; 3000 shares will be issued to Glen Eaton or any other qualified guarantor to renew the rental agreements with Rantoul Truck Center. *(Current agreements expire March 2011)*

E.) If (and since) personal guaranty is required by the DIP lender the individual providing the personal guaranty will be issued 3000 shares.

F.) The balance of the shares totaling 5000 shares will be pro-rated as follows: (same ownership percent pre-petition):

  a.) Previous Preferred Stockholders receive 3750 shares which is 75% of the 5000 shares unallocated stock.
  b.) Previous Common Stockholders receive 1250 shares which is 25% of the 5000 shares of unallocated stock.

G.) The actual pre-petition and post-petition stock ownership is illustrated in the attached Exhibits B and C.

## ARTICLE V
## MEANS FOR EXECUTING PLAN

**5.01.** The Allowed Claims described above shall be paid from the net cash flow of the Debtor as described in the attached Exhibit "D," a cash flow analysis.

5. 02. <u>Cash</u>. Cash assets of Debtor will be used to pay the Administrative Claims, plus operating expenses of the Debtor after Confirmation. There is, as of July 30, 2010, $93,471.74 on hand in the DIP account for this purpose.

5.03. <u>Accounts Receivable Owed Debtor</u>. Debtor utilizes its accounts receivable to fund month to month operating expenses.

5.04. <u>Preferences and Other Causes of Action</u>. Debtor has a duty to pursue any Claims it might have under §§502, 544, 545 and 546 of the Bankruptcy Code, as well as any objection to claims, preference claims pursuant to §547, fraudulent transfer claims pursuant to §548, and any

-7-

claims relating to post-petition transactions under §549 of the Bankruptcy Code. The proceeds generated by successfully pursuing these causes of action will be used to make the payments described above.

**5.05.** <u>Cash Flow Worksheet.</u> Exhibit D illustrates why this Plan is feasible and includes averages of twelve month income and expenses with debt service and a slight overage to address miscellaneous unforeseen expenses. Exhibit E shows actual income and expenses for the past six months.

## ARTICLE VI
## LIQUIDTION ANALYSIS

6.01 Debtor's liquidation analysis styled "Recovery Value" is attached hereto as Exhibit "F", and when read in conjunction with the Plan, demonstrates creditors will receive more through the Plan than in the event of a Chapter 7.

## ARTICLE II
## CORPORATE EXISTENCE

**7.01.** Eaton Moery Environmental Services, Inc. shall continue to exist after Confirmation.

## ARTICLE VIII
## USE OF SECTION 1129(b) OF THE BANKRUPTCY CODE

Debtor requests confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

## ARTICLE IX
## INJUNCTION FROM ENFORCEMENT OF DEBT

As of the Confirmation Date, all Creditors will be permanently enjoined (i) from commencing or continuing by any manner or means any collection or other proceeding of any kind with respect to a Claim against the Debtor, its estate, or its Assets; (ii) from enforcing, attaching, collecting or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, its estate or its Assets; (iii) from creating, perfecting or enforcing any encumbrance or lien of any kind against the debtor, its estate, or its Assets; (iv) from asserting any set off right of subrogation or recoupment of any kind against any obligation due the Debtor; and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

# ARTICLE X
## PROVISIONS FOR THE RESOLUTION OF DISPUTED CLAIMS AND OBJECTION TO PROOFS OF CLAIM

**10.01.** Debtor has the right and responsibility to object to and to consent to the allowance of any Claims filed with the Court.

**10.02.** Objections to Claims must be filed with the Court and served upon the Claimant prior to the expiration of ninety (90) days from the Effective Date, otherwise Claims will be an Allowed Claim, unless an extension of time period is sought by Debtor.

**10.03.** Prior to the expiration of thirty days from the receipt of an objection, the Claimant, whose Claim has been objected to, must file with the Court and serve upon the objecting party a response. Failure to file a response within the thirty (30) day period will require the Court to enter a default judgment against the non-responding Claimant and thereby grant the relief requested in the objection to the Claim.

# ARTICLE XI
## RETENTION OF JURISDICTION

**11.01 Retention of Jurisdiction.** Until the Effective Date and until the case is closed, the Court will retain jurisdiction of this proceeding for the purposes set forth in Section 1127(b) of the Bankruptcy Code and to:

(a) Determine the allowance or disallowance of Claims and Interests and to enforce all causes of action which may exist on behalf of Debtor;

(b) Determine any and all disputes arising under or related to the First Amended Plan;

(c) Determine any and all applications, adversary proceedings and contests of litigated matters commenced in connection with the proceeding, both before and after the Confirmation Date; and

(d) Insure that the purpose and intent of the Plan is carried out, and for such other matters as may be proper.

In no event will the Retention of Jurisdiction by the Bankruptcy Court be less than that specified in Section 105 of the Bankruptcy Code.

**11.02 Modifications of Plan.** The Plan may be modified in accordance with the provisions of the Bankruptcy Code and the applicable Bankruptcy Rules.

**11.03. Liens of Secured Parties and Interests of Lessors.** Any and all liens, claims and encumbrances of Secured Creditors and lessors (except those liens, claims or encumbrances retained in the Plan or set forth in the Plan) will be released and extinguished when the

Confirmation Order becomes a Final Order. Debtor will remain liable to Creditors and lessors only for the performance of the terms of the Plan.

## ARTICLE XII
## GENERAL PROVISIONS

**11.01. Confirmation of Transaction.** All transactions, transfers or sale of Assets of Debtor contemplated by the First Amended Plan, whenever occurring, will be deemed confirmed as reasonable, necessary and integral components in the furtherance of the Plan and will not be taxed under any law imposing a stamp or a similar tax.

**11.02. Headings.** The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**11.03. Binding Effect of Plan of Reorganization.** The rights, duties and obligations of any persons named or referred to in the Plan will be binding upon, and will inure to the benefit of the successors and assigns of such person.

## ARTICLE XII
## CLOSING THE CASE

**12.01. Consummation of Plan of Reorganization.** Upon the payment of all Allowed Claims as described above, the Plan will be deemed substantially consummated.

**12.02. Final Decree.** At any time after the Effective Date the Debtor may move for a Final Decree closing the case.

DATED THIS 24th day of March 2011.

                        EATON MOERY ENVIRONMENTAL SERVICES, INC.

                        By: /s/ Glen F. Eaton
                             Glen F. Eaton
                             President & Chief Executive Officer

                        Dowden Law Firm, P. A.
                        Counsel for Debtor
                        By: /s/ James F. Dowden
                             James F. Dowden (#77046)
                             212 Center St.; 10th Floor
                             Little Rock, AR 72201
                             (501) 324-4700

# PAYMENT SCHEDULE

**4.01 Class II and Class III (Priority Tax Claims and Non-tax Claims)**

I. <u>IRS</u>

   A. $27,902.07 @ 6% for 3 months beginning 7/10/11
      1st payment due 7/10/11 is $9,440.20
      2nd payment due 8/10/11 is $9,393.69
      3rd final payment due 9/10/11 is $9,349.19

   B. $43,554.24 @ 6% for 26 months beginning 10/10/11
      monthly payment of $1,784.04 till paid in full

   C. $196,643.07 @ 6% for 60 months beginning 10/10/11
      monthly payment of $3,768.99 till paid in full

II. <u>State of Arkansas Sales & Use Tax</u>

   $55,682.70 @ 6% for 60 months beginning 10/10/11
   monthly payment of $1,067.24 till paid in full

III. <u>ADEQ (Disposal Tax)</u>

   $58,000 @ 6% for 60 months beginning 10/10/11
   monthly payment of $1,111.66 till paid in full

IV. <u>Dept. of Labor</u>

   $33,610.77 @ 6% for 60 months beginning 10/10/11
   monthly payment of $661.00 till paid in full

**4.03 Class VI (Landfill Vendors Priority Unsecured) $646,000 Total**

I. <u>Santek</u>

   $136,500 @ 6% for 60 months beginning 10/10/11
   monthly payment of $2,616.25 till paid in full

II. <u>Legacy Landfill</u>

   $81,522 @ 6% for 60 months beginning 10/10/11
   monthly payment of $1,562.50 till paid in full

III. <u>Environmental Specialties inc.</u>

   $227,000 @ 6% for 60 months beginning 10/10/11
   monthly payment of $4,350.83 till paid in full

IV. <u>West Helena Regional Landfill</u>

   $54,514 @ 6% for 60 months beginning 10/10/11
   monthly payment of $1,111,44 till paid in full

V. <u>Crittenden County Landfill</u>

   $60,634 @ 6% for 60 months beginning 10/10/11
   monthly payment of $1,162.14 till paid in full

IV. <u>NEA Regional Landfill</u>

   $14,726 @ 6% for 12 months beginning 10/10/11
   monthly payment of $1,263.97 till paid in full

IV. <u>Jackson County Landfill</u>

   $14,927 @ 6% for 12 months beginning 10/10/11
   monthly payment of $1,281.22 till paid in full

IV. <u>West Carroll Parrish Landfill</u>

   $63,097 @ 6% for 60 months beginning 10/10/11
   monthly payment of $1,240.90 till paid in full

EXHIBIT "A"

I. **Preferred Stockholders Pre-petition     6/30/10**

| | NAME | ADDRESS | CITY, ST | ZIP | No. of Shares | |
|---|---|---|---|---|---|---|
| 1. | Briland Venture Capital, LP | 775 Ridgelake Blvd. Suite 100 | Memphis, TN | 38120 | 4,913 | Preferred Stock |
| 2. | Gregory C. Firtik | 775 Ridgelake Blvd. Suite 450 | Memphis, TN | 38125 | 303 | Preferred Stock |
| 3. | J. Lester Crain, Jr. | 3030 Midland Ave. | Memphis, TN | 38111 | 1,042 | Preferred Stock |
| 4. | W. Reid Sanders | 5100 Wheelis Drive Suite 206 | Memphis, TN | 38117 | 1,042 | Preferred Stock |

II. **Common Stockholders Pre-petition     6/30/10**

| | NAME | ADDRESS | CITY, ST | ZIP | No. of Shares | |
|---|---|---|---|---|---|---|
| 1. | Glen F. Eaton | 500 Pintail Cove | Harrisburg, AR | 72432 | 900 | Common Stock |
| 2. | C.B. Moery, Jr. | 1600 Hamilton | Wynne, AR | 72396 | 900 | Common Stock |
| 3. | Robert M. Ford | Ford Law Office 513 Falls Blvd. | Wynne, AR | 72396 | 440 | Preferred Stock |
| | | | | | 200 | Common Stock |

EXHIBIT "B"

## All Stockholders Post Petition
## 20,000 Shares Common Stock

|    | NAME | ADDRESS | CITY, ST | ZIP | No. of Shares |
|----|------|---------|----------|-----|---------------|
| 1. | Tim Phillips, Sr. Mgmt | 1784 Hwy 1 North | Wynne, AR | 72396 | 1000 |
| 2. | Carole McClain, Sr. Mgmt | 1784 Hwy 1 North | Wynne, AR | 72396 | 1000 |
| 3. | Byron Neal, Sr. Mgmt | 1784 Hwy 1 North | Wynne, AR | 72396 | 1000 |
| 4. | Glen F. Eaton, President | 1784 Hwy 1 North | Wynne, AR | 72396 | 9525 |
| 5. | C.B. Moery, Jr., Chairman | 1784 Hwy 1 North | Wynne, AR | 72396 | 3,525 |
| 6. | Robert M. Ford | Ford Law Office 513 Falls Blvd. | Wynne, AR | 72396 | 200 |
| 7. | Briland Venture Capital, LP | 775 Ridgelake Blvd. Suite 100 | Memphis, TN | 38120 | 2,524 |
| 8. | Gregory C. Firtik | 775 Ridgelake Blvd. Suite 450 | Memphis, TN | 38125 | 162 |
| 9. | J. Lester Crain, Jr. | 3030 Midland Ave. | Memphis, TN | 38111 | 532 |
| 10. | W. Reid Sanders | 5100 Wheelis Drive Suite 206 | Memphis, TN | 38117 | 532 |

EXHIBIT "C"

# Exhibit "D"
## CASH-FLOW ANALYSIS

|  |  | Average |
|---|---|---:|
| Total Revenue | $ | 570,340 |
| Total Expenses | $ | 470,574 |
| Net Operating Income | $ | 99,766 |
| Net Operating Income | $ | 99,766 |
| Add Backs | $ | 52,000 |
| **Funds Available for Debt Service** | **$** | **151,766** |

| **Debt Service** |  |  | **Monthly Payment** |
|---|---|---|---:|
| A. Bond Payments | Monthly As Scheduled | $ | 57,000 |
| B. Truck Leases/Rentals | Monthly As Scheduled | $ | 45,800 |

| **Tax Payments** |  | **Monthly Payment** |
|---|---|---:|
| A. IRS - Federal Payroll - Beginning 10/10/11 | $ | 5,553.03 |
| B. Arkansas State Sales Tax - Beginning 10/10/11 | $ | 1,067.24 |
| C. ADEQ - Disposal Tax - Beginning 10/10/11 | $ | 1,111.66 |
| D. Dept. of Labor - Beginning 10/10/11 | $ | 661.00 |

| | | | |
|---|---|---|---:|
| **Unsecured Priority** | 100% face value    $ 654,920  --  Monthly  5 yrs @ 6% | $ | 14,589.25 |
| **Unsecured** | 50% face value  $ 232,000  --  $ 20,000 annually till paid | $ | 1,700.00 |
| **DIP Loan** | Interest and Factoring Fee's | $ | 8,900.00 |
| **Reserve** | Cell Development and Equipment Replacement | $ | 10,000.00 |

| | | |
|---|---|---:|
| **Balance** | **$** | **5,383.82** |

EXHIBIT "D"

(EXHIBIT "F")

## Recovery Value

|  | Chapter 11 On-Going Business | | | Chapter 7 Liquidation | | |
|---|---:|---:|---|---:|---:|---|
|  | Total | Each | | Total | Each | |
| Residential Carts -- 13,000 | $ 325,000.00 | $ 25.00 | | $ 130,000.00 | $ 10.00 | |
| Commercial Containers - 800 | $ 280,000.00 | $ 350.00 | | $ 80,000.00 | $ 100.00 | |
| Roll-off Boxes -- 480 | $ 960,000.00 | $ 2,000.00 | | $ 480,000.00 | $ 1,000.00 | |
| D-5 Dozier | $ 25,000.00 | | | $ 18,000.00 | | |
| D-6 Dozier | $ 35,000.00 | | | $ 22,000.00 | | |
| Landfill Compactor | $ 125,000.00 | | | $ 100,000.00 | | |
| 914 Loader | $ 30,000.00 | | | $ 15,000.00 | | |
| Roll-off Trucks -- 6 | $ 120,000.00 | $ 20,000.00 | | $ 95,000.00 | $ 15,833.33 | |
| Rearload Truck -- 1 | $ 15,000.00 | | | $ 5,000.00 | Salvage | |
| Automated Truck -- 2 | $ 20,000.00 | $ 10,000.00 | | $ 10,000.00 | Salvage | |
| Service Truck -- 1 | $ 10,000.00 | | | $ 8,000.00 | | |
| Wynne Office / Shop | $ 350,000.00 | | | $ 275,000.00 | | |
| Parkin Landfill | $ 2,500,000.00 | | With Contracts | $ 1,000,000.00 | | No Contracts |
| DeWitt Landfill | $ 4,000,000.00 | | With Contracts | $ 1,500,000.00 | | No Contracts |
|  | **$ 8,795,000.00** | | | **$ 3,738,000.00** | | |

EXHIBIT "F"

EXHIBIT "E"

# Plan of Reorganization
# Monthly Cash Flow Worksheet

| May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 | Jan-11 | Feb-11 | YTD |
|---|---|---|---|---|---|---|---|---|---|---|
| 500,176 | 639,980 | 643,349 | 674,136 | 602,884 | 563,309 | 543,679 | 580,235 | 483,625 | 508,800 | 6,844,083 |
| 130,715 | 144,922 | 127,265 | 118,175 | 132,344 | 139,986 | 132,179 | 168,854 | 172,581 | 124,993 | 1,657,724 |
| 369,461 | 495,058 | 516,084 | 555,961 | 470,540 | 423,323 | 411,500 | 411,381 | 311,044 | 383,807 | 5,186,359 |
| 286,211 | 357,277 | 386,332 | 401,892 | 371,157 | 352,751 | 356,297 | 361,905 | 319,317 | 303,335 | 3,989,172 |
| 0 | 0 | 725 | 0 | 0 | 5,500 | 6,036 | 4,393 | 0 | 0 | 16,654 |
| 83,250 | 137,781 | 129,027 | 154,069 | 99,383 | 65,072 | 49,167 | 45,083 | (8,273) | 80,472 | 1,180,533 |
| 56,000 | 56,000 | 56,000 | 56,000 | 56,000 | 56,000 | 56,000 | 56,000 | 56,000 | 56,000 | 672,000 |
| 8,392 | 8,392 | 8,392 | 8,392 | 8,392 | 8,392 | 8,392 | 8,392 | 8,392 | 8,392 | 100,704 |
| 14,589 | 14,589 | 14,589 | 14,589 | 14,589 | 14,589 | 14,589 | 14,589 | 14,589 | 14,589 | 175,068 |
| 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 20,400 |
| 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 106,800 |
| (6,331) | 48,200 | 39,446 | 64,488 | 9,802 | (24,509) | (40,414) | (44,498) | (97,854) | (9,109) | 105,561 |

(EXHIBIT "E")